IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION

**FILED**

APR 3 0 2007

DAVID CREWS, CLERK
By_____
Deputy

KEITH DEWAYNE NOOTBAAR,
ADMINISTRATOR OF THE ESTATE OF
TIMOTHY BRYAN NOOTBAAR, DECEASED,
AND INDIVIDUALLY AND AS FATHER AND
NEXT FRIEND OF STEVEN CHRISTOPHER
NOOTBAAR, MICHAEL MARTIN NOOTBAAR,
AND NATHAN JAMES NOOTBAAR, MINORS;
AND MARTHA KIMBERLY NOOTBAAR                          **PLAINTIFFS**

**VERSUS**                                CAUSE NO. 1:07CV103-D-D

GENERAL MOTORS CORPORATION;
ISUZU MOTORS LIMITED; AND ISUZU
MOTORS AMERICA, INC.                                 **DEFENDANTS**

## COMPLAINT

COMES NOW Keith Dewayne Nootbaar, individually and as Administrator of the

Estate of Timothy Bryan Nootbaar, and the father and next friend of Steven Christopher

Nootbaar, Michael Martin Nootbaar, and Nathan James Nootbaar, minors; and Martha

Kimberly Nootbaar, by and through their attorneys of record, and file this their Complaint

against General Motors Corporation, Isuzu Motors Limited, and Isuzu Motors America, Inc.,

defendants, and in support thereof would respectfully show unto the Court the following

facts, to-wit:

### Parties

1

1.      Keith Dewayne Nootbaar is an adult resident citizen of the State of Minnesota and is the duly appointed and acting Administrator of the Estate of Timothy Bryan Nootbaar, deceased, who, at the time of his death, was a citizen of the State of Mississippi. Keith Dewayne Nootbaar is the father and next friend of Steven Christopher Nootbaar, Michael Martin Nootbaar, and Nathan James Nootbaar, minor siblings of Timothy Bryan Nootbaar, who are now resident citizens of the State of Minnesota. Keith Dewayne Nootbaar joins in this suit as a plaintiff in his individual capacity.

2.      Plaintiff, Martha Kimberly Nootbaar, is an adult resident citizen of the State of Texas, the mother of Timothy Brian Nootbaar, Steven Christopher Nootbaar, Michael Martin Nootbaar, and Nathan James Nootbaar, minors, and joins herein as a plaintiff in her individual capacity.

3.      The defendant, General Motors Corporation (hereinafter "GMC"), is a Delaware corporation with its headquarters and principal place of business in the State of Michigan and in no other state.

4.      The defendant, Isuzu Motors Limited (hereinafter "Isuzu"), is a Japanese organization, the precise nature of which is not known to the plaintiffs.

5.      The defendant, Isuzu Motors America, Inc., (hereinafter "Isuzu America"), is a Michigan corporation with its principal place of business located in the State of Michigan and in no other state.

2

## Jurisdiction

6.     This Court has original jurisdiction of this action pursuant to the provisions of

28 *U.S.C.A.* § 1332 in that complete diversity of citizenship exists between the parties herein

and the amount in controversy exceeds the sum of Seventy-Five Thousand Dollars

($75,000.00), exclusive of interest and costs.

7.     This Court has *in personam* jurisdiction of the defendants by virtue of the

following facts and law:

   a.     As to GMC: It is a foreign corporation but is qualified to do and

is doing business in Mississippi, and is subject to the service of the process of

this Court on its appointed agent for service of process, C T Corporation

System, 645 Lakeland East Drive, Suite 101, Flowood, Mississippi   39232;

   b.     As to Isuzu: Isuzu, at all times pertinent hereto, was a Japanese

organization not qualified to do business in the State of Mississippi but is

doing business in the State of Mississippi in that it committed a tort in whole

or in part in this state against a resident or non-resident of this state and is,

therefore, subject to the jurisdiction of the courts of this state by service upon

it in accordance with the provisions of the Hague Convention;

   c.     As to Isuzu America: Isuzu America is subject to the service of

process of this Court pursuant to the provisions of *M.C.A.*, § 13-3-57, in that

it committed a tort in whole or in part in the State of Mississippi against a

3

resident of this state and is subject to the service of process of this Court pursuant to the provisions of MISSISSIPPI RULES OF CIVIL PROCEDURE, Rule 4(c)(5) by service by certified mail on its agent for service of process in the State of Michigan, The Corporation Company, 30600 Telegraph Road, Bingham Farms, Michigan 48025.

## Venue

8.     This Court has venue of this action pursuant to the provisions of 28 *U.S.C.,* 1391, in that the cause of action sued on herein occurred and accrued in Lowndes County, Mississippi, within the Eastern Division of the United States District Court for the Northern District of Mississippi.

## Statutory Basis for Action

9.     This action is brought by the parents and siblings of the decedent and the Administrator of the estate of the decedent pursuant to *M.C.A.*, § 11-7-13.

## Underlying Facts

10.     At all times herein mentioned, GMC was engaged in the design, manufacture, production, testing, assembling, marketing, advertising, promoting, distributing, and/or selling of motor vehicles, including the Chevrolet Colorado vehicle.

11.     Isuzu, at all relevant times, was engaged in the design, manufacture, production, testing, assembly, marketing, advertising, promotion, distribution, and/or selling of motor vehicles, including the Chevrolet Colorado vehicle.

4

12.     Isuzu America, at all times relevant hereto, was engaged in the design, manufacture, production, testing, assembly, marketing, advertising, promotion, distribution and/or sell of motor vehicles, including the Chevrolet Colorado vehicle.

13.     GMC designed in part, tested, marketed, manufactured and introduced into the stream of commerce a 2005 Chevrolet Colorado pickup truck, VIN 1GCDS196558133533. Isuzu and Isuzu America each participated in the design of that particular 2005 Chevrolet Colorado pickup truck.

14.     Prior to manufacturing the 2005 Colorado pickup truck, GMC and both Isuzu and Isuzu America (hereinafter collectively "Isuzu") knew that the truck was susceptible to over-steer, loss of control, and rollover.  Prior to designing and manufacturing the 2005 Colorado pickup truck, GMC and Isuzu knew that electronic stability control system reduced over-steer, loss of control, and rollover of the vehicle if provided in the design and manufacture of such vehicle.

15.     On August 28, 2000, in a written submission to NHTSA, GMC claimed that electronic stability control was a promising anti-rollover technology.  With respect to electronic stability control, Gary Cowger, the president of GMC's North American Operations, stated, "[E]xcept for the growing use of seatbelts, we have rarely seen a technology that brings such a positive safety benefit."

16.     The 2005 Colorado pickup truck was part of the GMT 355 platform which first went into production with the 2004 model year.

5

17.     In the 2005 model year, GMC offered electronic stability control as a standard feature on its Cadillac Escalade. In this model year, GMC offered electronic stability control as a standard feature on the Cadillac Escalade EXT. In the 2005 model year, GMC offered electronic stability control as a standard feature on the Cadillac ESV, as well as on its Cadillac Seville, Cadillac SRX, Cadillac XLR, Cadillac CTS, and Cadillac DeVille.

18.     In the 2005 model year, GMC offered electronic stability control as an option on the Chevrolet Avalanche.

19.     In the 2005 model year, GMC offered electronic stability control as a standard feature on the Chevrolet Corvette and on its Chevrolet Express passenger van 3500 (extended wheel base).

20.     In the 2005 model year, GMC offered electronic stability control as a option on its Chevrolet Suburban, Chevrolet Tahoe, Chevrolet Uplander, GMC Yukon, GMC Yukon Denali, GMC Yukon XL, and GMC Yukon CL Denali.

21.     In the 2005 model year, GMC offered electronic stability control as a standard feature on the GMC Savana passenger van (extended wheel base), its SAAB 9.3, its SAAB 9.5, its SAAB 9.7x.

22.     In the 2005 model year, Isuzu did not offer electronic stability control on any Isuzu-brand vehicles sold in the U. S. market.

23.     Isuzu did not incorporate an electronic stability control into the design of the 2005 Chevrolet Colorado.

6

24. GMC did not incorporate electronic stability control in the design of the 2005 Chevrolet Colorado and did not offer electronic stability control as an option on the 2005 Chevrolet Colorado.

25. Isuzu did not incorporate electronic stability control into the design of the 2005 Chevrolet Colorado.

26. The 2005 Chevrolet Colorado was intended by the defendants to be used by the ultimate purchasers or users thereof for the purpose of vehicular transportation on the public streets and highways of the State of Mississippi and the United States of America.

27. Prior to June 14, 2006, the defendants designed and manufactured as certain 2005 Chevrolet Colorado pickup truck bearing VIN 1GCDS196558133533 (hereinafter "the product" or "vehicle"). After the design and manufacture of said vehicle, the defendants placed the same in the stream of commerce by selling or distributing it to one or more distributors who in turn sold the product to Keith Dewayne Nootbaar, the first consumer purchaser, on March 22, 2005.

28. From the time of Mr. Nootbaar's purchase of the vehicle up to the time of the motor vehicle accident complained of herein, neither Mr. Nootbaar nor his son, Timothy Bryan Nootbaar, were given reasonable notice that the vehicle was unsafe, defective, or unreasonably dangerous in that it was not equipped with electronic stability control.

29. At approximately 3:18 o'clock P.M. on June 14, 2006, Timothy was driving the vehicle in a westerly direction along U. S. Highway 82 in Lowndes County, Mississippi.

Due to the vehicle's defective handling and lack of electronic stability control, Timothy lost control of the vehicle, resulting in the vehicle rolling over and colliding with a Nissan Altima proceeding in an easterly direction on U. S. Highway 82, resulting in the death of Timothy.

30.     At the time of the crash, Timothy was wearing his seatbelt and was properly restrained by the seatbelt in the vehicle. At the time of the crash, Timothy was not under the influence of alcohol nor was he under the influence of any drug or intoxicating substance.

31.     Immediately before and at the time loss of control of the vehicle occurred, the vehicle driven by Timothy was being used by him in a manner reasonably foreseeable to the defendants. The defendants, at the time of the design, manufacture and original sell of the product, knew, or should have known by the exercise of reasonable diligence, that the product would be used without inspection for defective design and/or manufacture. By placing the product on the market and in the stream of commerce, the defendants represented that the product would safely do the job for which it was intended.

32.     The vehicle, as designed, manufactured, and originally sold by the defendants, and at the time of the occurrence complained of herein, was unsafe for its intended use in that it was designed and manufactured without electronic stability control. At the time of the design and manufacture of the vehicle by the defendants and at the time of the occurrence complained of herein, the vehicle was unnecessarily unsafe and created an unreasonable danger to Timothy and others who could reasonably be expected to use the vehicle for its reasonably foreseeable and intended uses and purposes.

8

## Causes of Action

### Count I - Negligence

33.    Plaintiffs incorporate by reference the allegations contained and set forth in paragraphs 1 through 32.

34.    At the relevant times, the defendants had, and continued to have, a duty to exercise reasonable care in designing, developing, testing, manufacturing, assembling, marketing, promoting, distributing and/or selling the vehicles it introduced into the steam of commerce, including a duty to provide a vehicle free of unreasonably dangerous components and systems.

35.    Defendants owed, and continue to owe, a duty to properly warn consumers of the risks and dangers associated with use of the vehicles it manufactures.

36.    The defendants breached the aforesaid duties by failing to exercise ordinary care in the design, manufacture, development, testing, assembling, marketing, promoting, distributing and sell of the vehicle, in that:

      a.    They failed to incorporate electronic stability control into the design of the vehicle;

      b.    They failed to properly warn consumers of the risks and dangers associated with the use of the vehicle and the occupant protection performance of its rollover protection systems in foreseeable rollover crashes;

9

c.     In the exercise of reasonable care, should have known that the 2005 Chevrolet Colorado was prone to over-steer, loss of control, and roll over during foreseeable driving maneuvers, including roadside recovery maneuvers;

d.     Failed to utilize alternative designs to mitigate against over-steering, loss of control in the vehicle;

e.     Failed to provide adequate warnings regarding the handling of the vehicle; and

f.     Failed to properly and adequately test the vehicle.

37.     The negligence, as outlined above, proximately caused Timothy's injuries and death and the ensuing damages recoverable under the Mississippi Wrongful Death Act, *M.C.A.*, § 11-7-13.

## Count II - Strict Product Liability

38.     Plaintiffs incorporate by reference the allegations contained and set forth in paragraphs 1 through 32.

### A.

### Strict Liability Claim for Defective Design

39.     At the time the vehicle left the control of General Motors, the vehicle was designed and manufactured in a defective manner which rendered it unreasonably dangerous to its users, including Timothy, in that GMC failed to incorporate an electric stability control

10

system on said vehicle. Said vehicle remained in such condition without substantial change from the time of its original sell by GMC up to and through the time of the collision on June 14, 2006.

40.     The harm alleged herein, being the injuries and damages sustained by Timothy and the damages sustained by his parents and siblings as a result of his death, was not caused by an inherent characteristic or generic aspect of the vehicle that could not be eliminated without substantially compromising the products usefulness or desirability.

41.     GMC and Isuzu knew, or in the light of reasonably available knowledge or by the exercise of reasonable care should have known, about the danger complained of herein that caused the injuries and damages sustained by Timothy and the plaintiffs.

42.     The product failed to function as expected by Timothy as an ordinary user or consumer and there existed a feasible design alternative that would have, to a reasonable probability prevented the harm without impairing the utility, usefulness, practicality or desirability of the vehicle to users or consumers.

43.     By utilizing the vehicle and its component parts in a manner which was entirely foreseeable to GMC and Isuzu and in a manner which said defendants intended, Timothy did not know or appreciate a condition of the product that was inconsistent with his safety or the danger in such condition.

**B.**

**Strict Liability Claim for Lack of Adequate Warning**

11

44.     The defective condition of the vehicle and its component parts rendered the product unreasonably dangerous to the user and consumer and the defective and unreasonably danger condition of the product proximately caused the damages set forth herein.

45.     At the time that the vehicle left the control of GMC, it was in a defective condition which rendered it unreasonably dangerous to its users, including Timothy, due to its lack of adequate warnings to communicate to the users thereof sufficient information with regard to the potential of loss of control of the vehicle due to the absence of an electric stability control system on the vehicle, which could possibly result in loss of control, injuries and deaths.

46.     At the time the vehicle left the control of GMC, GMC and Isuzu knew, or in light of reasonably available knowledge or the exercise of due diligence should have known, about the danger which caused the injuries and damages sustained by Timothy and his wrongful death beneficiaries, and GMC and Isuzu knew, or should have known, that the ordinary user or consumer would not realize such danger.

47.     The danger presented by the vehicle, its lack of an electronic stability control system, was not know nor open and obvious to Timothy taking into account the ordinary knowledge common to persons who ordinarily use such product.

48.     By utilizing the vehicle in a manner which was entirely foreseeable to GMC and Isuzu and in a manner about which GMC and Isuzu failed to give adequate warning of

danger, Timothy did not know or appreciate a condition of the product that was inconsistent with his safety, did not appreciate the danger in the condition of the vehicle, and did not deliberately and voluntarily chose to expose himself to the danger in such a manner to register ascent on the continuance of the dangerous condition.

49.     The aforesaid defective condition rendered the product unreasonably dangerous to the user and consumer and the defective and unreasonably dangerous condition of the product proximately caused the damages set forth herein.

## COUNT III - Breach of Implied Warranty

50.     At all times pertinent hereto, GMC and Isuzu, as sellers of the vehicle and all component parts thereof, impliedly warranted the vehicle and its component parts to be fit for the purposes for which they were designed, manufactured and sold.

51.     The vehicle and its lack of an electronic stability control system, were not, in fact, fit and suitable for their intended purposes but were dangerous when used for their intended purposes.

52.     GMC and Isuzu breached the implied warranty of fitness and the implied warranty of merchantability as to said product.

## CAUSATION

53.     As a direct and proximate result of the gross and wanton negligence of GMC and Isuzu, as aforesaid, Timothy Nootbaar was killed.

## DAMAGES

13

**A.**

## Compensatory

54.     As a direct and proximate result of the gross negligence of the defendants, as aforesaid, Timothy was caused to sustain serious, permanent and painful injuries, including death, as a result of the loss of control of the vehicle and the subsequent collision of the vehicle with the Nissan Altima.

55.     At the time of his death, Timothy was 18 years of age, in good health, and had a life expectancy of 58.5 years according to *The Vital Statistics of the United States, 2004*.

56.     As a direct and proximate result of the tortious conduct of the defendants, as aforesaid, the plaintiffs, on information and belief, allege that Timothy was caused to experience and suffer excruciating physical pain and mental anguish as a direct and proximate result of the negligence of the defendants.

57.     Pursuant to the provisions of *M.C.A.*, § 11-7-13, the plaintiffs are entitled to recover (a) all damages which Timothy would have been able to recover from the defendants had he survived, and (b) all damages which Timothy's parents and siblings sustained as a result of his death, all in an amount in excess of the jurisdictional limits of this Court.

**B.**

## Punitive

58.     In designing, manufacturing and selling an unreasonably dangerous product and in failing to provide adequate warnings regarding its propensities and dangers, GMC and

14

Isuzu acted with such gross negligence as to evidence a willful, wanton, or reckless disregard for the safety of others, including Timothy. Consequently, plaintiffs are entitled to an award of punitive damages of and from GMC and Isuzu to punish said defendants for such conduct and to deter them and others similarly situated from like conduct in the future.

59.     In the event of an award of punitive damages in this action of and from GMC and Isuzu, plaintiffs are entitled to an award of reasonable attorneys' fees, out of pocket expenses, and costs.

## AD DAMNUM

WHEREFORE, PREMISES CONSIDERED, plaintiffs, Keith Dewayne Nootbaar, individually and as father and next friend of Steven Christopher Nootbaar, Michael Martin Nootbaar, and Nathan James Nootbaar, and as Administrator of the Estate of Timothy Bryan Nootbaar; and Martha Kimberly Nootbaar, individually, now bring this action against the defendants, General Motors Corporation, Isuzu Motors Limited, and Isuzu Motors America, Inc., and demand damages as follows:

1.     An award of compensatory damages of and from said defendants, jointly and severally, in an amount in excess of seventy five thousand dollars ($75,000.00), exclusive of interest and costs, sufficient to afford reasonable compensatory damages allowable under *M.C.A.*, § 11-7-13; and

15

2.    An award of punitive damages of and against said defendants, jointly and

severally, in an amount sufficient to punish them for their egregious conduct and to deter said

defendants and others similarly situated from similar conduct in the future; and

3.    An award of attorneys' fees and litigation costs; and

4.    All costs of this action to be assessed.

WILLIAM H. LISTON (MB # 1277)
126 North Quitman Avenue
Post Office Box 645
Winona, MS 38967
Tel: 662/283-2132
Fax: 662/283-3742
E-Mail: bliston@listonlancaster.com

and

JOHN M. MONTGOMERY (MB # 3814)
109 East Main Street
Post Office Box 891
Starkville, MS 39760
Tel: 662/323-1500
Fax: 662/323-0980
E-Mail: jmontgomery@listonlancaster.com

By: _____

ATTORNEYS FOR PLAINTIFFS

OF COUNSEL:

MICHAEL R. COWEN
(Subject to Motion for Admission *Pro Hac Vice* )
520 Levee Street
Brownsville, TX 78520
Tel:  956/581-4981
Fax:  956/504-3674
E-Mail: Michael@ammonslaw.com

LISTON/LANCASTER, PLLC
109 East Main Street
Post Office Box 891
Starkville, MS 39760
Tel:  662/323-1500
Fax:  662/323-0980

H:\S06-08\P&O\Complaint

17